| | |
|---|---|
| **MONITOR STUDIOS, LLC,** )<br><br>**Plaintiff,** )<br><br>v. )<br><br>**ROSS REDDICK, a/k/a SIBE, a/k/a** )<br>**ALASKA; and JOHN DOES 1-10** )<br><br>**Defendants.** ) | **MEMORANDUM OF AUTHORITIES** |

NOW COMES the Plaintiff, by and through its undersigned attorneys, and pursuant to a request from the Court, respectfully offers this Memorandum of Authorities in support of its Motion for Default Judgment in the above-reverenced matter.

<u>ISSUE</u>

The sole issue for discussion in this Memorandum of Authorities is the propriety of full compensatory damages in a copyright infringement action where the copyrighted material could be regarded as immoral or obscene. Without conceding that the copyrighted material in this case is either immoral or obscene, the Plaintiff suggests that the matter of infringement is and can be decided solely on the basis of the Copyright Act without regard to the content of the protected material, and in support thereof offers the following argument.

<u>ARGUMENT</u>

Congress has the power, granted by the Constitution, to "promote the progress of Science and Useful Arts, by securing for a limited time to Authors … the exclusive Right to their … Writings." U.S. Constitution, Art. 1, § 8. Congress has enacted several statutes to effectuate the constitutional mandate. In the current statutory regime, Congress extends copyright protection to

1

"pictorial, graphic or sculptural works." 17 USC § 102 (a) (5). The salient issue is whether the owner of a work afforded the protection of a copyright which might be taken as an immoral or obscene picture can still file suit for infringement. It is important to note that there has been no such finding with regard to the artwork at issue in this case.

There is some split of authority on the primary question, although the split appears to have more to do with time than with geography. In cases decided prior to World War II, there appears to be some willingness on the part of appellate courts to assert that materials of "blasphemous, seditious, immoral or libelous" nature were entitled to copyright protection. This split of authority is briefly treated in the annotation at 50 A.L.R. Fed. 805 (1980). The common theme in the cases collected in the annotation is the conflict of competing public policy aims: the desire for national uniformity in the granting and protection of copyrights against the notion that copyright protection should not be afforded to material that is otherwise illegal. *Id.*

One illustration of the dilemma is found in *Broder v. Zeno Mauvais Music Co., 88 F. 74 (CC Cal, 1898).* In that case the plaintiff filed an action for alleged infringement of his copyright in a song called "Dora Dean." The song contained a line indicating that "Dora Dean" was "the hottest thing you ever seen." Because the word "hot" can be defined as lustful, lewd or lecherous and further reasoning that the connotation of the use of term "hottest" in the lyric fit those undesirable definitions, the court dismissed the claim. *Id.*

Another somewhat different treatment is in evidence in *Simonton v. Gordon, 12 F.2d 116 (SD NY, 1925).* In that case the plaintiff was the author of a novel called *Hell's Playground*. He sued the author of a play entitled *White Cargo*, claiming that the playwright had lifted a number of themes, settings, characterizations and so forth from the novel. Despite acknowledging that

"it is doubtful if a charge of immorality may successfully be maintained," the court quoted with

approval from Weil on Copyrights:

> The rule that there can be no copyright in any blasphemous, seditious, immoral immoral or libelous work rests on sound principles of public policy and is not deemed overruled by the present [1909] statute. Since, however this principle rests in public policy, cases decided in one age are not a safe guide, on their facts, in subsequent times, and the present tendency, undoubtedly, is to allow much more latitude than formerly to free speech and thought. While the doctrine under discussion is sound in principle, its application is to be extended only to clear cases. (*Weil on Copyrights,* quoted without specific citation in *Simonton v. Gordon, 12 F.2d at 30-1.*)

The court went on to note that, "so far as morality is concerned, the play is no improvement upon

the book." Therefore, the court concluded that plaintiff was entitled to an injunction prohibiting

further performances of the play. *Id.*

Professor Weil's comments from a text written in the first quarter of the twentieth century

regarding changing attitudes toward what is and is not acceptable are echoed in subsequent

developments. In the leading treatise on copyright law, Professor Nimmer states that "although

in the past, a number of courts took the view that that obscene works are not eligible for

copyright," the currently prevailing view is that "a work is not excluded from copyright

protection by reason of its obscene content." 1-2, *Nimmer on Copyright, § 2.17 (2005).* The key

change, in Nimmer's view, was the "most thoughtful and comprehensive analysis of the issue"

by the Fifth Circuit in *Mitchell Brothers Film Group v. Cinema Adult Theater*, *504 F.2d 852 (5th

Cir., 1979).* The infringement alleged was for the showing by the defendant of a motion picture

called "Behind the Green Door," for which the plaintiff owned the copyright. Among the

defenses raised by the defendant was that the movie was obscene. The District Court for the

Northern District of Texas ruled in favor of the Defendant in a bench tried case. The Fifth

Circuit reversed. The Court of Appeals rejected the argument that the Copyright Act is silent as

Case 5:04-cv-00940-FL   Document 7   Filed 03/29/06   Page 3 of 9

to what type of works may be protected by copyright. Instead, the Fifth Circuit pointed to the all-inclusive language of 17 USC § 102, to wit "all the writings of an author is facially all-inclusive, within itself admitting of no exceptions." *Id,* at 853. The court went on to note that the absence of content-based restrictions on copyrights was "an intentional policy choice and not simply an omission." *Id.* at 854. The evidence supporting that assertion, said the court, was: (1) the inclusion by Congress in the Lanham Act of explicit restrictions on any trademark that "consists of or comprises immoral, deceptive, or scandalous matter; and (2) the requirement in the patent statutes that an invention must be shown to be "useful" prior to the issuance of a patent. *Id.* In a footnote that court further noted that earlier versions of the Copyright Act had contained language that could be said to place content restrictions on copyrights, but that all such language was filtered out of the 1909 version of the act. *Id.* Notably, Congress has not added content restrictions in the current version of the Copyright Act.

The *Mitchell* court went on to bolster its view that the exclusion of content restrictions in the Copyright Act was a conscious reflection of Congressional intent, saying "it is not surprising that Congress would choose to rely on public acceptability as a measure of a work's worth rather than on the judgment of public officials such as the Register of Copyrights and federal and state judges." *Id.* at 855. The court stated the competing policy considerations in this way:

> The purpose underlying the constitutional grant of power to Congress to protect writings is the promotion of original writings, an invitation to creativity. This is an expansive purpose with no stated limitations of taste or governmental acceptability. Such restraints, if imposed, would be antithetical to promotion of creativity. The pursuit of creativity requires freedom to explore into gray areas, to the cutting edge, even beyond. Obscenity, on the other hand, is a limiting doctrine constricting the scope of acceptability of the written word. *Id.* at 856.

The court follows that observation with a litany of works once regarded as obscene by earlier generations that were by 1979 regarded as works of "great literary merit," including James

Case 5:04-cv-00940-FL   Document 7   Filed 03/29/06   Page 4 of 9

Joyce's *Ulysses*, Theodore Dreiser's *An American Tragedy* and Erskine Caldwell's *God's Little Acre*. *Id.* at 857. All of those works, incidentally, were copyrighted in the United States before they were found to be obscene in certain localities.

The court in *Mitchell* also took note of a particularly difficult practical problem. Under the applicable obscenity standard enunciated by the Supreme Court in *Miller v. California, 413 U.S. 15 (1973)*, obscenity is determined on the basis of contemporary community standards. In *Miller* and its progeny, the Supreme Court has expressly rejected the notion that there is a national standard for obscenity. Attempting to apply the *Miller* definition of obscenity in a copyright setting would be an invitation to chaos. What might be viewed as obscene in the Western District of North Carolina might not be so viewed in the Eastern or Middle District. Obscenity has a flexible standard that can vary from community to community while the standard for whether material is copyrightable is determined by a national standard established by Congress. *Id.* at 858.

Finally, the *Mitchell* court took note of a number of what it termed "judicially-created defenses to infringement actions involving immoral or obscene works." *Id.* at 861. The first of these was described by the court as judges acting as "conservators of the public morality;" that view "led to the suppression of works because they were inconsistent with Biblical teachings or because they were seditious." *Id.* Such a view was strongly rejected by the Fifth Circuit, which said succinctly that "it is inappropriate for a court, in the absence of some guidance or authorization from the legislature, to interpose its moral views between an author and his willing audience." *Id.*

The second "judicially-created doctrine" addressed in *Mitchell* is the theory that a person can have no property interest in obscene materials. The court dismisses that theory, saying that it

"expresses by means of a legal fiction the underlying judicial moral conclusion that the work is not worthy of protection." The court goes on to say that "the doctrine has never been adopted in this country ... and should not be." *Id.*

The court dealt at greater length with the equitable doctrine of unclean hands, which the court notes was used more often in British courts than American courts. Nonetheless, because the Northern Texas District Court had entertained the unclean hands theory, the Fifth Circuit felt constrained to give the doctrine extended treatment in its opinion. The Court of Appeals states unequivocally that unclean hands "should not be used as a conduit for asserting obscenity as a limit upon copyright protection." *Id.* The court cites several reasons in support of this assertion. (1) Creating a defense to copyright enforcement "in the name of unclean hands or through any other vehicle" manufactures a defense not authorized by Congress in the Copyright Act, with the result that the purpose of having an all-inclusive system of copyright protection would be frustrated. *Id.* "Requiring authors of controversial, unpopular, or new material to go through judicial proceedings to validate the content of their writings is antithetical to the aim of copyrights." *Id.* (2) The Supreme Court has held that equitable doctrines should not be applied to defeat the purpose of a statute. *Id.*, citing *Perma-Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134 (1968)* and other cases. (3) There is no apparent need for an additional check on obscenity since "most if not all states have statutes regarding the dissemination of obscene materials," as do an array of federal statutes and decisions. *Id.* at 862. Moreover, said the court, it is doubtful that denial of copyright protection on the basis of obscenity would decrease the flow of obscene materials. In fact, "many commentators ... are of the view that denial of injunctions against infringers of obscene materials will only increase the distribution of such works." *Id.* at 863. In the case at bar, refusal to enforce the copyright of Monitor Studios on its

artwork would indeed have the effect of making those materials more readily available. If in fact the materials protected by Monitor's copyrights are obscene, a point that is by no means conceded, allowing the defendant in this case to distribute them only proliferates their availability on the internet. (4) Permitting an obscenity defense to copyright infringement "would introduce an unmanageable array of issues into routine copyright infringement actions." *Id.* Courts faced a similar dilemma with regard to a case of infringement where the defense raised was that the content of the copyrighted material was fraudulent. *Belcher v. Tarbox, 486 F.2d 1087 (9th Cir., 1973).* The defendant infringer there asserted that the copyright should not be enforced because the copyrighted materials included fraudulent claims concerning coupons. The Ninth Circuit rejected the argument out of hand. *Id.* at 1088.

The unclean hands defense is inappropriate because typically that defense involves some showing that the unclean hands of the plaintiff resulted in some injury to the defendant. See, *Lawler v. Gilliam*, 569 F.2d 1283 (4th Cir., 1978) There is not, nor can there be in this case, any assertion that plaintiff's alleged unclean hands caused defendant to infringe on the plaintiff's copyright.

There is one final point touched upon in *Mitchell* to be addressed. In order to apply the *Miller* standards for obscenity, there would have to be some evidence that Monitor's copyright protected artwork had been disseminated in a community where it was regarded as obscene. *604 F.2d at 863, n. 24.* There is no such evidence before the court. There is likewise no evidence that the mere act of creating these copyrighted drawings caused any public injury. Whether copyrighted material that previously has been deemed obscene retains its copyright protection is a slightly different question that apparently no federal court has addressed. Based on the reasoning in *Mitchell*, it is apparent that even a proper judicial finding of obscenity would not

necessarily obviate copyright protection. The copyrighted motion picture, "Deep Throat," for example, still appears in a list of copyrighted motion pictures despite a number of findings from around the United States that the film is obscene. Under *Mitchell*, the owners of the copyright to "Deep Throat" could still sue to enjoin the dissemination of the film and to recover damages in an appropriate case.

Illustrative of that last point is *Magnuson v. Video Yesteryear, 85 F.3d 1424 (9th Cir., 1996)*. In that case, Magnuson held the copyright to a black-and-white film of a 1965 performance by the comedian Lenny Bruce. As a result of the performance, Bruce was arrested, tried and convicted of obscenity. Magnuson copyrighted the film after Bruce's death in 1968. In 1979, Video Yesteryear ("VY") purchased a copy of the film, but the copy obtained by VY had no copyright notice. Magnuson sued for infringement. Overcoming objections that it was not the rightful owner of the copyright, Magnuson succeeded in its copyright infringement claim in the trial court and VY appealed. Magnuson cross-appealed the denial of attorney's fees. On appeal, the Ninth Circuit upheld the judgment for Magnuson, and made the following observation in remanding the case for reconsideration of Magnuson's attorney's fees: "we are particularly concerned that the small award for damages in this case in insufficient to deter future copyright infringements such as the one at issue here." *Id.* at 1428(?) The question of whether the obscenity portrayed in the film (i.e. a performance which resulted in a judicial determination that Bruce's act included obscene material) defeated Magnuson's copyright claim did not arise.

## CONCLUSION

In the absence of Congressional authorization to make copyright enforcement contingent on acceptable content, any inquiry into the content of the copyrighted material that goes beyond the inquiry necessary to establish the infringement is not appropriate. The concept of a "gate-

keeping" function as a prerequisite to enforcing copyrights has been explicitly rejected in modern American (read post-*Miller*) jurisprudence and is not include in the broad sweep of the Copyright Act. Therefore, the copyright of Monitor Studios should be enforced, and in order to deter the unauthorized and more widespread dissemination of the artistic representations copyrighted by Monitor, it should be enforced to the full extent of the plaintiff's actual damages.

This the 10th day of February, 2006.

THE CONNOR LAW FIRM, PLLC

By:     /s/ Gregory S. Connor
        State Bar No. 22445

        /s/ W. Russell Congleton
        State Bar No. 31983
        Suite 170
        6340 Quadrangle Drive
        Chapel Hill, NC 27517
        Telephone: (919) 402-4337
        Facsimile:  (919) 402-9500
        Attorneys for Plaintiff